On . Application for Rehearing.
There are but two points made in the elaborate briefs of the plaintiff and appellant for a rehearing; the balance is detail.
This is a petitory action, and our decree affirmed the judgment in favor of the defendant, from which the plaintiff appealed.
The foundation of the plaintiff’s claim is the agreement which was made on the 2d of May, 1845, by which James Dick, HenryE. Lawrence and Robert B. Brashear engaged to enter lands from the government of the United States, Dick to furnish the money, and Lawrence and Brashear to make the selections and locations.
The first proposition assigned in the application is, that our opinion was in error in saying that the “ titles were to vest in the parties respectively, in the proportion of one-half in Dick, and one-fourth each in Brashear and Lawrence; the truth being that, under that agreement the legal, as well as the equitable title, was in Dick, and in him alone.”
The second proposition is, that no part of the land claimed in this suit was embraced in the conveyance from H. E. Lawrence to R. B. Brashear, bearing date May 28, 1849.
If either proposition can be sustained on the record plaintiff is entitled to a rehearing.
I.
ON THE FIRST PROPOSITION.
Of course, the agreement was anticipatory, being made in advance of the entries of the land. All entries were made in the names of either James Dick or Effingham Lawrence, Jr., the latter name being used instead of that of H. E. Lawrence, supposedly as a matter of convenience. None of the lands were entered in the name of R. B. Brashear. All the entrance money was furnished by *1639 Dick, and several thousands of acres of land were selected and patented as stated.
Now, what was the course of the transactions between these different parties, during the following twenty-five years, with reference to these lands, as exhibited by written deeds and other acts? Let us look into the record and see.
But in the beginning it must be remarked that the title of H. E. Lawrence and assigns depends upon the self-same deeds and transactions as does the title of R. B. Brashear and assigns, and that the plaintiff’s title is alleged to have been derived from Dick and subsequently from Walter R. Brashear', the son and heir of R. B. Brashear.
Roundly stated, plaintiff’s claim is that his ancient author, Dick, was, under the agreement of 1845, the exclusive owner of all the lands which were entered in either the name of Dick or Effingham Lawrence, and the equitable interest of H. E. Lawrence in the common property as well as that of R. B. Brashear had been adjusted and settled, and that the defendant acquired nothing from H. E. Lawrence; while on the other hand defendant claims to have derived certain specified lands of those in suit from the widow and heirs of H. E. Lawrence, bearing dates, respectively, June 24, 1889, May 26, 1890. and August 28, 1890, H. E. Lawrence having acquired from Effingham Lawrence, Jr., by an act bearing date April 17, 1848.
The controversy is as to which has the better or paramount title to the property in dispute.
In 1849, only four years after the aforesaid agreement was entered into, Dick died, leaving a will in which he bequeathed to Mrs. Sarah D. Partee all of his property, constituting her his universal legatee. This will was probated and Mrs. Partee put in possession of the estate of the deceased.
On the 14th of February, 1850, within one year after Mrs. Partee became possessed of her inheritance, H. E. Lawrence conveyed to her all of the lands which were entered and stood in the name of Effingham Lawrence, Jr., same having been previously conveyed from Effingham Lawrence, Jr., to Henry E. Lawrence on the 17th of April, 1848.
Subsequently on March 25, 1856, Mrs. Partee conveyed all the right, title and interest she possessed to Robert B. Brashear, and at his death Walter R. Brashear inherited his entire estate, he being the only child and heir. Walter R. Brashear conveyed to W. W. *1640 Howcotb on the 19th of January, 1893, and he in turn conveyed to plaintiff.
Consequently, these two transactions, the one between H. E. Lawrence and Mrs. Partee, and the other one between Mrs. Partee and R. B. Brashear, are chiefly relied upon as sustaining the plaintiff’s chain of title.
But it is striking that there does not appear any deed from R. B. Brashear to Mrs. Partee of his share of the common property, and there is no reference made to it in the deed of Mrs. Partee to him of her interest in the property.
But counsel for the plaintiff insists that the deed from H. E. Lawrence to Mrs. Partee evidences a full settlement of all his interest in the common property.
That deed conveys only certain specified property — that which the vendor had acquired from Effingham Lawrenee; and his warranty is limited to claims and demands arising from his own acts, alone.
The following clause in the deed is, however, relied upon as supporting the plea of final liquidation and settlement, viz.:
“That, after satisfying the claims of the said Henry E. Lawrence and Robert B. Brashear, in all other respects and matters, complying with and fulfiling the terms and conditions of the said agreement, sundry tracts of land fully described in the patents hereinafter referred to fell to the share of James Dick, who, by his last will and testament * * * bequeathed the same to the said Mrs. Partee,” etc. (Our italics.)
This transaction took place in 1850, soon after the death of Dick; but in the deed from Mrs. Partee to R. B. Brashear in 1856 we find the statement, viz.:
“ And whereas she, the said Mrs. Partee, is desirous of bringing the said agreement to a close, so far as she is or may be interested or concerned, and of terminating and disposing of her interest in the lands as acquired by her as aforesaid,” etc. (Our italics.)
If, in point of fact, a full and final settlement had been made with Henry E. Lawrence and Robert B. Brashear in 1850, as intimated in the deed of that year, how can it at the same time be true that in 1856, when the second deed was executed, Mrs. Partee should have still been “ desirous of bringing the agreement to a close.”
If, in point of fact, plaintiff’s] present contention were true, that *1641 Dick was the sole and exclusive owner of all the lands, how is that expression in the former, viz.: “that sundry tracts of land, fully described in the patents hereinafter referred to, fell to the share of Diek, who by last will and testament bequeathed the same to the said Mrs. Partee,” etc., to be accounted for? and how is that expression in the latter, viz.: “ She was desirous of bringing the said agreement to a close so far as she is or may be interested or concerned, and of terminating and disposing of her interest in the lands as acquired by her as aforesaid,” etc., to be accounted for? It is impossible to be done.
Mrs. Partee, the author of plaintiff’s title, was a party to each of those deeds. She was vendee in one and vendor in the other. She is fully committed to the recitals of the former deed that certain lands “fell to the share of Dick,” and that he, by last will, “bequeathed the same” to her. These recitals in the deeds between Henry E. Lawrence, Robert B. Brashear, and Sarah T. Partee, universal legatee of Dick — all the parties to the original agreement of 1845 — are absolutely inconsistent and irreconcilable with the idea that Diek was sole and exclusive owner of all the lands which were •entered under the agreement of 1845.
Those two deeds are the ones through which the plaintiff claims, And they absolutely disprove the contention he now makes on this application for a rehearing.
Even if the original agreement of 1845 contemplated such absolute vestiture of title in Dick — though we are confident that it did not — it was clearly competent for them to make such disposition of •the property afterward as they chose.
This first proposition is altogether unfounded.
II.
It appears that on the 28th day of May, 1849, prior to the time Mrs. Partee acquired her inheritance from Dick, Henry E. Lawrence ■executed an act of sale to Robert B. Brashear for a large quantity of land, and amongst those particularly described are the lands which were purchased by him from Effingham Lawrence, Jr., on the 18th of A.pril, 1848, and also “ all the right, title and interest, being the •one undivided one-third in and to the lands entered in the names of FT. and J. Dick and Effingham Lawrence, Jr.,” etc.
*1642 The price of this sale was sixteen thousand three hundred dollars secured by vendor’s lien and mortgage.
H. E. Lawrence instituted an action against R. B. Brashear for the nullity of the aforesaid sale, and on the 3d of April, 1858, recovered a judgment annulling it and setting same aside, and all the property thereby convéyed was restored to him as owner.
The parties to the foregoing sale and judgment were H. E. Lawrence and R. B. Brashear, two of the parties to the agreement of 1845, and this suit was brought and judgment obtained near ten years after Dick had died and Mrs. Partee, as legatee, had become possessed of his property.
And notwithstanding she had made a title to R. B. Brashear in 1856 to all the lands she had acquired through Dick, no defence was made in that suit on that ground.
It is quite evident that Mrs. Partee could not acquire any title from R. B. Brashear to that land during the pendency of that suit against him.
On the 26th of July, 1860, Henry E. Lawrence instituted against R. B. Brashear a suit for a partition of all the aforesaid lands in which they were jointly interested in virtue of the agreement of 1845, specially enumerating and descrioing them, as well as all the acts and transactions of the parties to them.
Henry E. Lawrence died leaving this suit still pending. R. B. Brashear subsequently died also.
Afterward, on the 18th of January, 1881, Walter R. Brashear and the widow and heirs of H. E. Lawrence made and entered into a compromise of the partition suit, whereby the rights of the former to certain specified land was recognized, and he in turn relinquished his claim to all the remainder to the latter.
The second proposition of plaintiff for rehearing is that the deed of H. E. Lawrence to R. B. Brashear of the 28th of May, 1849, did not include the lands which were covered by the agreement of 1845.
Unless he can sustain that proposition, the judgment must stand.
But in that deed there is a positive declaration that he did convey “ all the right, title and interest, being the one undivided one-third, in and to the lands entered in the name of N. and J. Dick and Effingham Lawrence, Jr.,” etc., and that certainly referred to the lands which were entered under the agreement of 1845. It could have referred to nothing else.
*1643 Yet, counsel for plaintiff still insists “ that not one piece of land described in the act of May 28, 1849, is shown tobe in dispute here ” —referring to the numbers and description of the lands.
But that may be true, so far as the lands which are particularly described are concerned; yet it is not correct, in so far as their designations as the lands entered in the names of Dick and Lawrence are concerned.
In the suit to annul the sale of May 28, 1849, they were treated as being included, and also in the judgment canceling the sale.
Also in the partition suit between H. E. Lawrence and R. B. Brashear, they are enumerated and described.
Recognizing this to be a fact, and endeavoring to evade the force and effect of those judicial admissions, counsel for plaintiff in his brief, is driven to the necessity of declaring:
“But this whole suit of Lawrence is, on its face, a falsity; he claims that the act of May ‘¿8,1849, referred to those lands.”
Surely, counsel can not be serious in desiring this court, on this mere assertion, to declare that suit a “ falsity,” notwithstanding it was maintained and judgment thereon pronounced more than thirty years ago.
If it was not a fact that those lands were included in that act of sale, how is it that they were included in that suit and judgment?
And if they were not included in that suit and judgment, why is it now decried as a “falsity?”
Having been included in that suit and judgment against R. B. Brashear, both H. E. Lawrence and R. B. Brashear are bound by them, and so is W. R. Brashear, as the son and heir of R. B. Brashear, and W. R. Brashear is plaintiff’s immediate author.
This contention is also absolutely groundless.
Rehearing refused.